This case should be re-ended for two reasons. First, because the 924 C conviction is based on improperly admitted lay opinion testimony and insufficient evidence. And secondly, because Mr. Hayes was improperly sentenced as a career offender guideline. I'd like to address our career offender issue first. And here, the court applied the 60-day restrainer, 60 months to life under guideline 4B1.1. The issue is whether the conviction under the California Health and Safety Code 11351 was a controlled substance. Reuben Hayes Right. Oh yes. You do have to be prepared to address the pending impact. Yes. You know, it's versus Martinez, isn't it? Although it's a different statute in that case. It's precisely the issue in front of the court there. That issue would, if decided in favor of the appellant in that case, I think would be an additional reason for... Well, if it's decided against you. Because the appellant in that case... Oh, but that doesn't decide the issue in this case at all, does it? Well, the first question is, do we apply this? Is this a divisible statute? Yes. In the court, I mean, this court's prior precedent, sorry, had managed to tell that it was divisible. Right. Right. Now that's probably a good question. I think it's not a divisible statute. If it's not a divisible statute, then, I mean, it doesn't apply. It cannot be a controlled substance offense, and therefore, it has to be reoccurring. So that issue, we should wait for the Martinez one. I agree, Your Honor. What's your argument about why you would prevail in an appellate's use? Well, because here, there is a feeling of ambiguity in the records we're relying on under the modified categorical approach. And the Medina-Lara case here, I think, is on point in controlling. There, this court found there was ambiguity as to the content of the charged document. And that was because the complaint talked about count three and the advective judgment, count three and A. Here, we have absolutely the same kind of ambiguity. In fact, it's greater. Here, we have a July 2005 complaint, and in October 2005 information was referred to the particular substance. But then, on the day of sentencing, we have three different documents, none of which refer to the particular substance or to the prior complaint. And if they're addressed in a referring to the prior complaint file, there's one count. Yes, there is. But there are two ambiguities that are... So there's only one counted issue here? Well, we don't know. Here's why we don't know. Because the clerk's minutes on refer to rearrangement. It just means the change in the plaintiff. I'm sorry. Doesn't rearrangement generally mean change in the plaintiff's case? No, I don't think so, Your Honor. I think rearrangement means there's a new charging document for purposes of the plaintiff. Well, is there any in this record? Is there any other charging document? Well, no. But that's exactly the ambiguity that we had in Medina-Lara. Because there, there was no record of it. And yet, there was a reference that suggested there might have been and we have absolutely that same ambiguity here because we have reference to rearrangement in the first count of an information where we have an information that has no divisions of counts or no references to the first count. So... Okay. We have a one, because I understand, to see if I'm... We have a complaint and an information. Is this what they want charged? Yes, Your Honor. And put aside the rearrangement issue for a second. We have a guilty plea or an all plea to the crime violation of Section 11351 as charged in the first count of the information. So your argument is that is... And then the abstracted judgment says, you're going to convict under count one, section number 11351, a position for sale of a controlled substance, like what your client was. Right? So the ambiguity comes in, in what way? Well, it refers to the first count. On two things. Because it refers to rearrangement, which suggests... I say it's a rearrangement procedure. Secondly, yes, because it refers to the first count of the information and the only information in the record has no reference to the first count and, indeed, doesn't have one coming from the second count, so it doesn't make sense. So in the absence of the rearrangement, you can still argue that there was ambiguity here? Yes, absolutely. Certainly similar to Medina-Lara, where it's a difference between a 3 and a 3A. Here, we refer to the first count of the information. Well, I guess if you only have one, it only charges the first unit. So there's no reason to refer to the first count. You would just say it's charged in the information. So I guess for referring to the second, I find your argument more compelling. Like there's only one count in the information. See, let me put the two together, because there's a rearrangement in the first count of the information that suggests a charging document, which is not in the record. We don't know what it is. There's absolutely the same ambiguity that we have in Medina-Lara. I don't know. Medina-Lara is quite different. We know what the charging document is in Medina-Lara. No, we don't. Certainly, what we don't know is which county did it. Well, no. The court suggests that there may have been a superseding in charging documents. I guess the main basis of ambiguity that the court identifies is they say it doesn't match with the one we have in the record. So it appears right. We have been in a rearrangement. But here, there is a match if we think that the time that our information was held in one count as a first count. Right. It's a strange way and unnecessary way to refer to it. So I think it's the same kind of ambiguity as a 3 or a 3A. And secondly, we do have the rearrangement. Well, let me ask you the question, too. If it's set to the only count at the indictment, would you think there was any problem? Yes, because of the reference to rearrangement. Would you suggest a new charging document, which is not in the record? If the one that's in the rearrangement suggested a charging document, just as I would ask whether, doesn't it just suggest that he wanted to? In his original arraignment, he pleaded not guilty. He now wants to plead not guilty. I don't think so, Your Honor. Rearrangement, by its nature, says that he's been arraigned out of the indictment. It's not a change of plea. Right. So a change of plea seems to be the proper reference. But does the FCC's committee further document show that the original document was the same? Or it may show that that document is not in the record and is not properly referred to. We need clear and convincing evidence here. And for that reason, we don't have it. We have fatal ambiguity that all three documents that we have on the date of the arraignment, none of them refer to the controlled substance. And the clerk's minutes refer to a rearrangement of one in and first count of an information that doesn't refer to the controlled substance. They don't refer to what you told us. Exactly. You know, the obsessive-compulsive control of substance. So for that reason, we have that fatal ambiguity that requires us not to arraign this, you know, whatever the outcome in the bond case. But, you know, certainly those would both be reasons here. I'll give you a chance to ask your question. You're inviting further firearm infringements, am I right? Yes, Your Honor. What point is there to a trafficking crime if the thing isn't complete? When you are caught and charged with possession of a sufficient amount of weapon data to take your prudence, but you can't do so? Well, I think whenever you're in possession and you're going to attempt that, crime is complete. I think the issue here is the 924C count and whether the firearm was in fact a furtherance. So you're arguing there's not sufficient evidence to convict him of substituting? No, Your Honor, just the 924C. Okay, so here's my question. This is the evidence in this case in which he was convicted of the other count, or in which he had substantial evidence of trafficking. Yes. He found the controlled substance in a bag with gun. Yes. No, it isn't because it was in a safe bag. It's the controlled substance. So the gun is on the front floorboard of the car, where we also find the wallet of the passenger in the bag, and the drugs in the bag is in the trunk. Okay. So what we have is facts absolutely parallel to the Bailey case, and we know that Congress, when they enacted the furtherance laws, said those facts, this is probably not enough. And in fact, there they had the same extra witness evidence. So we don't have any case finding sufficient evidence for furtherance on those facts, on the Bailey facts, which Congress told us were not enough. In fact, Congress told us, you know, in furtherance is a higher standard even than the carrying durations. I'm sorry, I misspoke. There was ammunition in the bag with the controlled substance. Yes. In the bag at the top of the trunk, you may have ammunition in it, as well as drugs in the trunk. Isn't that enough to make you think there's a sufficiency of the evidence there? Well, we have very, very similar evidence to Bailey, where Congress said, no, you know, not enough. We had ammunition. Well, I think Bailey was the drugs in the ammunition that affected the safety tape. Well, we have one round of ammunition, 27 plastic bags, 30 grams of crankine in the car itself. We had gas in the ammunition. I asked a very specific question. What was the ammunition in the drugs in the same container in Bailey? I'm not sure if they were in the same container. They weren't in the same place. They are, but no. They were in the same car. Well, they were in the same part of the car with the plastic bags, the ammunition in one part of the car. And then in that case, the gun in the trunk. We have the reverse situation here, where we have the gun in the main part of the car and the drugs in the ammunition in the trunk. So I actually observed this. Taking slightly over time, but I just want to give you a chance to, your argument is there clearly would be sufficient information and evidence if Officer Moreno's testimony is true, correct? Well, I would not consider that, because again, the Bailey facts are the same there, and I think we have the same here. But here, yes, we have an addition. The improper or visionless lay opinion testimony of this testimony that drug dealers are not drug users who use guns. And I think that's very prejudicial here. One, because it's most likely prejudicial. My question is, why isn't it an appropriate testimony? Here's an agent who arrests drug dealers all the time, and presumably arrests mere drug users all the time. Why can't he, from his experience, say that some of them typically have guns and some of them typically don't? Well, and that absolutely demonstrates why it's not a lay opinion testimony, because there are two of the three requirements for lay opinion testimony. If one is that it's empty, based on specialized knowledge. So as you say, that it's based on expert experience and generalized experience, it doesn't qualify as a lay opinion testimony. But secondly, Were you not disqualified on lay opinion testimony? Because the only people that ever called for lay opinion are those that pick it up. And of course, they're counted. Well, no, no. If you have a lay opinion testimony, you should see a perception of a particular event, like you had here in this other case. I heard that in the conversation. This is what meets the context. This is just a very generalized opinion, based on my experience as a law firm. That's an expert testimony. But secondly, there's no basis in this perception. We have no foundation about anything that went to the issue of users versus drug dealers. This was simply a- Yeah, but one more question, and I think you can answer it very briefly. I'll try to. I think you can. I don't know if you will. What was the objection raised below to Officer Moreno's testimony? The comment below said he's clubbed as an expert, not your line of experience, and he objected on that basis. I think that's enough to bring the course of the issue. But I think if you're playing here- Can you tell me a few words? I'm not looking at you. Tell me the answer to that question. Thank you. Okay. Thank you. Well, it's definitely a good point. And we'll meet you in a minute for a moment. Hi, Chris. May it please the Court. Meredith Peltz-Horton for the United States. I'll first address the possible relevance of Martinez-Lopez for the Court's order. This act court asks about the possible relevance of bank- pending on-bank opinion in that case. Of the possible outcomes in that case, only one would directly impact the- Sure, but that one does directly impact, doesn't it? Yes. However- What are you going to say to that? Excuse me? The one outcome might affect which outcome? Is the on-bank court held contrary to this Court's prior decisions? I mean, bank cards can always be held contrary to our prior decisions. No, I would argue that that would also be contrary to the Supreme Court. Or in other words, you don't have to defend the result you want to have it done, or you can do what you want to do anyway. But maybe get my attention to the- That the California drug schedules is, or the California drug, type of California drug, is a means and not an element of the offense under the California health and safety code. And that would apply to all- I understand it would be disastrous and dumb, and you don't like it. But if the testimony, I think the only thing you should use before the court is, is it a divisible statute or not a divisible statute? Correct, but in two different ways. I understand, but let's assume that the on-court finds, in a way that's so stupid that you need to take it to the Supreme Court and get it reversed immediately, that this is not a divisible statute, that your opponent's position on this particular issue prevails in this case, isn't it? On that issue, yes, we would still argue harmless error. But why don't we wait? Don't we? Why shouldn't we? I mean, he's in jail, isn't he? Yes, Your Honor. He's serving a long sentence. He's serving a 20-month sentence. They become a shorter sentence if the case, the other case comes, but what's the harm for us waiting for more cases like this to come down on that issue? You can absolutely wait. And I'm not telling you that you can't. All I'm saying is that I think that outcome is the least likely outcome based on listening to the ombudsman's oral argument, at which the discussion was primarily on the first question, which is whether or not the actus reus, 111.352, which is not the statute involved in this case because the predicate offense, was divisible. Really, is there any distinction between type 351 and 352 on this issue? Not on the drug element, only on the actus reus. Fair enough. Court. So I'll leave that there. I would then like to just address the other issues on the career offender guideline application. I don't want to point the court specifically, because I don't think that this was addressed during my opponent's argument, that there was not only charging documents, which as you recognize, only reference one count, which points cocaine, but there's also a plea colloquy in this case that was missing in Medina Lara. In fact, the court asked repeatedly to get the plea colloquy in Medina Lara, and the government was unable to produce it. But here we have that document, and it's at ER 69, and at ER 74, faced the guilty to possession, for sale, of a controlled substance to it, cocaine. Even if there was any ambiguity, which the government contests, but even in this court order, there was any ambiguity in the charging documents, or the plea, the minute order, or anything like that, that is unequivocally cured by the plea colloquy, in which he is admits that he possessed a controlled substance to it, cocaine. Or the controlled substance. It was, and it's in the record here, and I just point the court to that. Is there a difference between what was in the colloquy, or something that you, in Medina, were able to determine? Not to my knowledge, your honor. It says, his charge is, he pleads no contest to the unlawful possession, for sale, of a controlled substance to it, cocaine. So I just think that that closes the door on the argument here about ambiguity. Okay. Can you address the latest case? Yes, I will. So, I would like to point out a couple of things about the Bailey case. The first is that, in that case, Bailey was charged with use of a firearm. During the course of the controlled substance offense here, Hayes was charged with carrying or possessing in furtherance. So, Bailey is, frankly, inapplicable. What we should be looking to are this case court's post-Bailey holdings, in cases which involved possession in furtherance. Namely, Fonzie, Hector, Rios, Kraus. And in all those cases, this court has said that there is evidence sufficient to prove that a defendant possessed the firearms where their requisite nexus is present. Which is determined by the proximity, accessibility, and strategic location of the firearm. Now, I think that's what I was trying to press your opponent on. I think there's plenty of evidence to the majority here. My question was really set on one issue, which is that was the testimony of Officer Rohani improperly admitted? So, the answer to that question is no. But I just wanted to go back and point out that, in addition to not challenging his conviction for possession of the drugs under 840-1, he's also not challenging his conviction for possession of the LN-122-T. So, he's not publicly possessed. He's not possessed the drugs. Anyway, there's plenty of evidence from which a reasonable finder of fact could find that the possession was in furtherance of the crime. I'm not sure that's your opponent's testimony here. I think it's better arguing that my criteria response to it is whether or not the officer's testimony was inadmissible. The answer to that question is no, it was not inadmissible. Because Officer Rohani's testimony was bifurcated by the district court. So, I guess that's more opposed to the whether or not. And the, as I understand it, his testimony as to why the dealers were willing to carry weapons was qualified expert testimony. And frankly, I'm not sure how it hurt anybody. Because it's the cop, it seems. They carry them to protect themselves. But it's the testimony that if you find a gun, that's a sign of trafficking. Because users don't carry guns. So, the concerns that this court raised in Freeman about lay opinion testimony was that the expert, that it might be somehow receiving unmerited credibility. Or that it might be speculative and unnecessarily repetitive. That wasn't true here because the proper foundation was laid. Officer Rohani testified that he had actually arrested numerous drug dealers and drug users and had taken guns off them. He also testified that he'd observed drug dealers with guns in the course of conducting surveillance of them. So, he did, unlike the witness and lawyer, for instance. Did he have any evidence for testimony that he arrested users and found that they didn't carry a weapon? I'm not sure, Your Honor. I'm not sure if that's the foundation. I mean, it seems to me that's what he found the evidence for as a clear witness. He did, however, testify that he's, when he arrested drug dealers, that he would ask them about their guns and that he told them that they carry guns to defend themselves from other drug dealers. The question that came to me was, maybe authorities carry guns. His testimony was, this is how you can possibly use a dealer, not a user. And did he have any testimony about how he concluded what users typically do? Well, I will point to his testimony on cross-examination, which also goes to the harmlessness of this testimony. But he testified on cross that guns are not always associated with a drug dealer, and that's in SCR 109. And he testified on cross-examination that he had arrested people with guns who didn't have drugs. So, even if this court- Yeah, but I would still focus on the question you've asked. Is that, did he say, I know from my own personal knowledge that users don't typically carry guns? He was, no, because he was confined to the single question that was agreed to at the pretrial conference, that drug dealers and non-users typically carry guns. Well, but how can you rely on that issue for your testimony if you don't provide any foundation for your knowledge about users? I would ask that the court go back and carefully re-read the testimony from Officer Lord-Murray if that's of concern. Okay, I'm sorry, but I've re-read it, maybe not as carefully as you want me to, but you had it. Tell me where he testifies to that issue. Well, I think he said testimony that I've just pointed to in SCR 109, testifying that he had, did arrest users who had guns, but more often he found that drug dealers had guns. Are you saying that that would break the objection or you're saying that it was harmless or that it was a mistake? I'm arguing both that it's a plain error of this court because he failed to specifically object, and then secondly, that the error was harmless. Yeah, so can I ask you about the first part, because I asked your opponent about that. What was the objection raised on those testimonies? I think there was a bit of a gloss put on it because, in fact, what he objected to, there was no specific word in say object, the defense counsel said only, that would be lay opinion, not expert opinion. Now it's based on experience, and I don't, and now we've cloaked him as an expert. That's in DR 41, and my reading of that is that it's evidencing a sort of concern about now the timing of this statement. But it's not an objection or objection, which I understand. No. It's an objection that says, this is expert testimony, not lay testimony. No, I disagree that it's even that objection, and I think it's, if you had asked in this statement before he gave his expert testimony, then we wouldn't have cloaked him as an expert. He'd be giving it as a lay opinion, and I wouldn't be as concerned about it, but now that he's cloaked as an expert, I am concerned that the jury is going to use this to weigh this. Well, to rephrase it, because that's why I asked, I think the objection was, judge, they're going to think this is an expert opinion, not a lay opinion. That's correct. Because he's given it right after he gave his expert opinion, and did the judge instruct the jury? Exactly. Then the jury said, don't, the judge basically told the counsel not to worry about it. I'm going to instruct them, and he gave the instruction at ER 42. So I guess I don't see here a foundational objection. I don't see an objection that says the officer couldn't build his own lay perspective. I don't either, and if the government had been given that opportunity, it would have undoubtedly corrected it, and that's exactly the reason that this court has said that specific objections are necessary to be preservable appeal. Thank you. If there are no further questions, I would ask this court to affirm that the objection is in sentence. Thank you. Look, you were over time, but we're good. Thank you. Just two points very quickly. First, on the objection point, I think it was clearly enough to bring the issue to the judge's attention here. I think it was plain error whether or not the opinion was preserved. It clearly doesn't meet the elements of 701. But the second thing, I like Barber's error. I don't think it was Barber's, because there was some testimony here as far as the 924C charge and the purpose for having the gun, and particularly given the fact that we also have a second person in the car here. So no, I think it was harmful. Secondly, I'd like to address the plea colloquy issue because on the sentencing issue, because the plea colloquy here doesn't cure the ambiguity because it doesn't tell us the content of the charging document. And I think the precedent, and here I'm referring to Marcia Acosta as the key case here, which rejects reliance on a plea that establishes the basis, even though there's a charging document, because it doesn't connect the two together. Well, what was your point of reading when you said, yeah, the plea colloquy incentive is a deal breaker. Pleading guilty to a charge, does it consider it coquetting to win coquetting? Well, that was the judge's statement, that there's no reference to the charging document, there's no reference to the information, there's no reference to the complaint. We still have the ambiguity about the rearrangement, the reference, excuse me, the first kind of information, and what that document was. That's all the written documents on that date. None of them have a, show us what was in that charge document. Well, what you're saying is, even though the plea colloquy, you were referring to saying, yeah, I will try pleading guilty to possession of coquetting, the charge on that document may not have said that it was going to coquetting. Yes, Your Honor, it may have referred to an earlier complaint to the record. It may have referred to an earlier information to the record. We don't know that, which was the basis of the complaint on that date. Okay, thank you. Thank you. Thank both counsel for putting up with us, and we're going to take a brief recess now, and we'll return to you in the following two minutes for questions.
judges: Siler, Canby, Hurwitz